IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Maryanne Chisholm, | ) No. CV-10-694-TUC-DCB (HCE) |
| Petitioner, | ) **REPORT & RECOMMENDATION** |
| vs. | ) |
| Charles L. Ryan; et. al., | ) |
| Respondents. | ) |

Pending before the Court is Petitioner's Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. §2254 (Doc. 1). Respondents have filed an Answer (Doc. 9) and Petitioner has filed a Reply (Doc. 10).

Pursuant to the Rules of Practice of this Court, this matter was referred to the to the undersigned Magistrate Judge for Report & Recommendation. (Doc. 11). For the following reasons the Magistrate Judge recommends that the District Court deny Petitioner's Petition for Writ of Habeas Corpus on the merits.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Petitioner's Conviction

On September 25, 2001, a grand jury indicted Petitioner on 58 counts with regard to charges that Petitioner illegally: conducted an enterprise (Count 1); engaged in super fraudulent and fraudulent schemes and artifices (Counts 2, 3, 4); and sold unregistered securities (Counts 5-58). (*See* Petition, p.2; Petition, Appendix (hereinafter "App.") (Doc.1-

1   1), pp. 1-13[1])).  Specifically, Count 1 alleges that Petitioner "knowingly committed illegally

2   conducting an enterprise by being employed or associated with Safari Media, Inc.

3   [(hereinafter "SMI")] and conducting or participating in the conduct of the affairs of such

4   enterprise through racketeering as set fort in Counts 2-58.  In violation of A.R.S. §§ 13-

5   2312(B) and (D) 13-603, 13-701, 13-702, 13-801, 13-804 and 13-811, 13-2313, 13-2314."

6   (Petition, App., p.1).  Counts 2 through 4, respectively, charge that pursuant to a scheme or

7   artifice to defraud, Petitioner, by means of fraudulent pretenses, representations, promises

8   or material omissions, knowingly obtained the following benefits: (1) $24,000,000 from

9   investors in SMI; (2) insurance for Directors and Officers of SMI from Fireman's Fund

10   Insurance; and (3) Insurance for Directors and Officers of SMI from Philadelphia Indemnity

11   Insurance.  (*Id.* at pp. 1-2).  Counts 5 through 58 charge that Petitioner intentionally or

12   recklessly offered for sale and/or offered for sale and/or sold an unregistered security to wit:

13   stock in SMI to several designated alleged victims.  (*Id.* at pp. 2-13).

14          The Arizona Court of Appeals summarized the facts as follows:

15          In 1996, Chisholm incorporated as a Delaware corporation.  Soon
       thereafter,  she began to sell shares of SMI stock, telling investors that SMI
16       designed and marketed CD-ROM titles and provided consulting services for
       website design.  In 1999, she provided investors with a series of forged
17       documents she had created on her computer, which purported to have come
       from a large Japanese technology company and from a well-known accounting
18       firm.  The documents stated that the Japanese company intended to purchase
       SMI as part of a merger and SMI had been audited in anticipation of the
19       merger.  Chisholm told investors that SMI stock, which she offered at one
       dollar per share, would be worth thirty-three dollars per share after the merger.
20       Several hundred new investors purchased SMI stock after Chisholm's
       announcement.
21          In 1999, the Arizona Corporation Commission (ACC) ordered
       Chisholm to stop selling SMI stock in Arizona on the ground she had been
22       selling unregistered securities. Chisholm continued, however, until June 2000,
       when the ACC filed a civil racketeering action against her and SMI was placed
23       into receivership...[That lawsuit eventually resulted in entry of summary
       judgment in favor of the ACC for $24 million.] From 1997 to 2000,
24       approximately one thousand investors had purchased more than $24 million
       in shares of SMI stock.  SMI, however, was a sham corporation; it had never
25       conducted legitimate business or had any significant business income, and
       nearly 100% of its revenues had come from shareholder investments.  Of

26

27          [1]Page numbers refer to the page numbers appearing at the bottom right of each page

28   of Petitioner's Appendix.

course, Chisholm had never been contacted by any Japanese company about a merger with SMI.

The evidence also showed that, in 1999, Chisholm had applied to Philadelphia Indemnity Insurance Company (Philadelphia Indemnity) and Fireman's Fund Insurance (Fireman's Fund) for insurance coverage for SMI's officers and directors. In the applications submitted to both companies, Chisholm included financial statements she represented as independently audited financial records showing SMI was earning millions of dollars. In fact, SMI had not been independently audited. Moreover, Chisholm failed to disclose that in 1997 the State of Washington Securities Division had ordered her to stop selling unregistered securities to Washington residents and that the ACC had started an investigation into her activities the same year. Philadelphia Indemnity issued a policy that provided $3 million in coverage, and Fireman's Fund issued a policy that provided $2 million in excess coverage.

(Petition, App., pp. 30-31) (footnote omitted).

On October 21, 2005, a jury convicted Petitioner on all 58 counts charged in the indictment. (Petition, p.4). On November 23, 2005, the trial court sentenced Petitioner to concurrent and consecutive sentences totaling 27.25 years of imprisonment. (*Id.*; Answer, p. 2).

**B.     Direct Appeal**

On direct appeal, Petitioner raised the following issues:

1.     The multiple charging of fraudulent schemes and artifice was improper and deprived Petitioner of due process under the United States and Arizona Constitutions.

2.     There was an insufficient basis for the fraudulent schemes and artifice charges in Counts 3 and 4. Alternatively, the fraudulent schemes and artifice charges in Counts 3 and 4 were multiplicitous.

3.     Petitioner was denied due process under the Fifth and Fourteenth Amendments of the United States Constitution, and Article 2, Section 4 of the Arizona Constitution, when she was charged with fraudulent schemes and artifice and sale of unregistered security in addition to illegally conducting an enterprise all in violation of her Fifth Amendment right not to twice be placed in jeopardy for the same offense.

4.     Petitioner's consecutive sentences constitute double punishment in violation

of A.R.S. § 13-116.

(Answer, Exh. B).  In May 2008, the appellate court affirmed Petitioner's convictions, but remanded for resentencing because the trial court erred by requiring the sentence imposed on Count 1 to be served consecutively to the sentences imposed on Counts 2 through 4. (Petition, App., p. 45).  On October 29, 2008, Petitioner's Petition for Review to the Arizona Supreme Court was denied.  (Answer, Exh. F.).  On remand, Petitioner was sentenced to a total of 19.25 years in prison.[2] (Answer, p. 2).

### C.     Petition for Post-Conviction Relief

On October 27, 2008, Petitioner filed a Petition for Post-Conviction Relief (hereinafter "PCR Petition") wherein she raised several instances of ineffective assistance of counsel, including that trial counsel was ineffective in failing to petition that trial commence prior to the trial of Petitioner and her husband in a different criminal matter.  (*See* Petition, App.,  pp. 47-65).  On February 23, 2009, the trial court denied Petitioner's PCR Petition. (Petition, p. 3 & App., pp. 66-74).  Petitioner sought appellate court review, and the Arizona Court of Appeals denied relief on August 6, 2009.  (Petition, p. 3 & App., pp. 75-100).  On December 15, 2009, the Arizona Supreme Court denied review.  (Petition, p. 3 & App., p. 101).

## II.     FEDERAL HABEAS PETITION

On November 24, 2010, Petitioner file the instant Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. §2254.  She raises the following grounds for relief:

---

[2]The trial court resentenced Petitioner as follows:

| Count 1: | Illegally Conducting an Enterprise | 3.5 years |
| Count 2: | Super Fraudulent Scheme and Artifice (concurrent with Count 1) | 5 years |
| Count 3: | Fraudulent Scheme and Artifice (consecutive with Count 2) | 5 years |
| Count 4: | Fraudulent Scheme and Artifice (consecutive with Count 3) | 9.25 years |
| Count 5-58: | Sale of Unregistered Security (concurrent with each other and Count 2) | 4.5 years each |

(Petition, App., pp. 24-28, 141).

1.     Petitioner's rights under the Double Jeopardy Clause of the Fifth Amendment were violated because: (a) Counts 2 through 58 are predicate offenses to Count 1; and (b) the three separate counts of fraudulent schemes and artifices constituted only one single offense.  (Ground I).

2.     Trial counsel was ineffective in failing to request that trials of Petitioner proceed in chronological order (Ground II).

(Petition).

Respondents concede that Petitioner's Petition is timely filed.  (Answer, pp. 3-4). Respondents also concede that Petitioner has exhausted her claims and that her claims are cognizable on habeas review.  (*Id.* at p. 4).  Respondents contend that the Petition is without merit and should be denied and dismissed.

## III.   DISCUSSION

### A.     Standard

Pursuant to the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter "AEDPA"), the Court may grant a writ of habeas corpus only if the state court proceeding:

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d). Section 2254(d)(1) applies to challenges to purely legal questions resolved by the state court and section 2254(d)(2) applies to purely factual questions resolved by the state court. *Lambert v. Blodgett*, 393 F.3d 943, 978 (9th Cir. 2004). Therefore, the question whether a state court erred in applying the law is a different question from whether it erred in determining the facts. *Rice v. Collins* 546 U.S. 333 (2006).

Section 2254(d)(1) consists of two alternative tests, i.e., the "contrary to" test and the "unreasonable application" test. *See Cordova v. Baca*, 346 F.3d 924, 929 (9th Cir. 2003). Under the first test, the state court's "decision is contrary to clearly established federal law

1   if it fails to apply the correct controlling authority, or if it applies the controlling authority

2   to a case involving facts materially indistinguishable from those in a controlling case, but

3   nonetheless reaches a different result." *Clark v. Murphy*, 331 F.3d 1062, 1067 (9th Cir.

4   2003)(*citing Williams v. Taylor*, 529 U.S. 362, 413-14 (2000)). Additionally, a state court's

5   decision is "'contrary to' Supreme Court case law if the state court 'applies a rule that

6   contradicts the governing law set forth in' Supreme Court cases."[3] *Van Lynn v. Farmon*, 347

7   F.3d 735, 738 (9th Cir. 2003) (*quoting Early v. Packer*, 537 U.S. 3, 8 (2002)). "Whether a

8   state court's interpretation of federal law is *contrary* to Supreme Court authority...is a

9   question of federal law as to which [the federal courts]...owe no deference to the state

10  courts." *Cordova*, 346 F.3d at 929 (emphasis in original)(distinguishing deference owed

11  under the "contrary to" test of section (d)(1) with that owed under the "unreasonable

12  application" test).

13  Under the second test, "'[a] state court's decision involves an unreasonable

14  application of federal law if the state court identifies the correct governing legal

15  principle...but unreasonably applies that principle to the facts of the prisoner's case.'" *Van

16  Lynn*, 347 F.3d at 738 (*quoting Clark*, 331 F.3d at 1067). Under the "unreasonable

17  application clause...a federal habeas court may not issue the writ simply because that court

18  concludes in its independent judgment that the relevant state-court decision applied clearly

19  established federal law erroneously or incorrectly....Rather, that application must be

20  objectively unreasonable.'" *Clark*, 331 F.3d at 1068 (quoting *Lockyear v. Andrade*, 538 U.S.

21  63 (2003)). When evaluating whether the state decision amounts to an unreasonable

22  application of federal law, "[f]ederal courts owe substantial deference to state court

23

24      [3]"[T]he *only* definitive source of clearly established federal law under AEDPA is the
25  holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court
    decision. *Williams*, 529 U.S. at 412...While circuit law may be 'persuasive authority' for
26  purposes of determining whether a state court decision is an unreasonable application of
    Supreme Court law, *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999), only the
27  Supreme Court's holdings are binding on the state courts and only those holdings need be
28  reasonably applied." *Clark*, 331 F.3d at 1069 (emphasis in original).

1    interpretations of federal law...." *Cordova*, 346 F.3d at 929.[4]

2         Further, a federal habeas court can only look to the record before the state court in

3    reviewing a state court decision under section 2254(d)(1). *Cullen,* __ U.S. at __, 131 S.Ct.

4    at 1400 ("If a claim has been adjudicated on the merits by a state court, a federal habeas

5    petitioner must overcome the limitation of §2254(d)(1) on the record that was before that

6    state court.")(footnote omitted); *Holland v. Jackson*, 542 U.S. 649, 652 (2004)("[W]e have

7    made clear that whether a state court's decision was unreasonable must be assessed in light

8    of the record the court had before it.")(citations omitted).

9         Under section 2254(d)(2), which involves purely factual questions resolved by the

10   state court, "the question on review is whether an appellate panel, applying the normal

11   standards of appellate review, could reasonably conclude that the finding is supported by the

12   record." *Lambert*, 393 F.3d at 978: *see also Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir.),

13   *cert. denied* 543 U.S. 1038 (2004)("a federal court may not second-guess a state court's fact-

14   finding process unless, after review of the state-court record, it determines that the state court

15   was not merely wrong, but actually unreasonable."). Section (d)(2) "applies most readily to

16   situations where petitioner challenges the state court's findings based entirely on the state

17   record. Such a challenge may be based on the claim that the finding is unsupported by

18   sufficient evidence,...that the process employed by the state court is defective...or that no

19   finding was made by the state court at all...." *Taylor*, 366 F.3d at 999 (citation omitted). In

20   examining the record under section 2254(d)(2), the federal court "must be particularly

21   deferential to our state court colleagues...[M]ere doubt as to the adequacy of the state court's

22   findings of fact is insufficient; 'we must be satisfied that *any* appellate court to whom the

23   defect [in the state court's fact-finding process] is pointed out would be unreasonable in

24

25

26         [4]Section 2254(d) applies even where there has been a summary denial. *Cullen v. Pinholster,* __ U.S. __, 131 S.Ct. 1388, 1402 (2011). In such circumstances, the petitioner can satisfy the "unreasonable application" prong of section 2254(d)(1) "only by showing that 'there was no reasonable basis' for the..." state court's decision. *Id.* (*quoting Harrington v. Richter,*___ U.S. __, 131 S.Ct. 770, 784 (2011)).

27

28

1  holding that the state court's fact-finding process was adequate.'" *Lambert*. 393 F.3d at 972

2  (quoting *Taylor*, 366 F.3d at 1000)(emphasis in original).

3        Once the federal court is satisfied that the state court's fact-finding process was

4  reasonable, or where the petitioner does not challenge such findings, "the state court's

5  findings are dressed in a presumption of correctness, which then helps steel them against any

6  challenge based on extrinsic evidence, *i.e.*, evidence presented for the first time in federal

7  court."[5] *Taylor*, 366 F.3d at 1000: *see also* 28 U.S.C. §2254(c). Factual and credibility

8  determinations by either state trial or appellate courts are imbued with a presumption of

9  correctness. 28 U.S.C. §2254(e)(1); *Pollard v. Galaza*, 290 F.3d 1030, 1035 (9th Cir. 2002);

10  *Bragg v. Galaza*, 242 F.3d 1082, 1078 (9th Cir. 2001), *amended* 253 F.3d 1150 (9th Cir.

11  2001).

12        Both section 2254(d)(1) and (d)(2) may apply where the petitioner raises issues of

13  mixed questions of law and fact. Such questions "receive similarly mixed review; the state

14  court's ultimate conclusion is reviewed under section 2254(d)(1), but its underlying factual

15  findings supporting that conclusion are clothed with all of the deferential protection

16  ordinarily afforded factual findings under §§ 2254(d)(2) and (e)(1)." *Lambert*, 393 F.3d at

17  978.

18  **B.**    **Discussion**

19      **1.**    **Ground I  Double Jeopardy Claims**

20          **a.**    **Sub-Claim (a): multiple convictions on Counts 2-58**

21        As to sub-claim (a), Petitioner claims that "[b]ecause Counts 2-58 are each predicate

22

23        [5]Under the AEDPA "a determination of a factual issue made by a State court shall be

24  presumed to be correct" and the presumption of correctness may be overcome only by clear and convincing evidence. 28 U.S.C. §2254(e)(1).  The "AEDPA spells out what this

25  presumption means: State-court fact-finding may be overturned based on new evidence presented for the first time in federal court only if such new evidence amounts to clear and

26  convincing proof that the state-court finding is in error....Significantly, the presumption of correctness and the clear-and-convincing standard of proof only come into play once..." it

27  is found that the state court reasonably determined the facts in light of the evidence presented

28  in the state proceeding. *Taylor*, 366 F.3d at 1000.

1  offenses to Illegally Conducting an Enterprise charged in Count 1, the Court of Appeals erred

2  in finding that the multiple convictions in Counts 2-58, which resulted in consecutive

3  sentences, did not violate the double jeopardy clause of the Fifth Amendment." (Petition,

4  p. 12).

5  **(1.)    The state court proceeding**

6      Petitioner was convicted of all charges.  Petitioner argued on direct appeal that

7  charging her with fraudulent schemes and artifices under A.R.S. §13-2310 (Counts 2-4),

8  selling unregistered securities in violation of A.R.S. §44-1841 (Counts 5-58), and illegally

9  conducting an enterprise in violation of §13-2312(B) (Count 1) violated her double jeopardy

10  rights because §§ 13-2310 (Counts 2-4) and 44-1841 (Counts 5-58) constitute the same

11  offense as § 13-2312(B) (Count 1) for purposes of double jeopardy.  (*See* Petition, App., p.

12  38).  In rejecting this argument, the appellate court cited *Blockburger v. United States,* 284

13  U.S. 299 (1932) among other federal and state cases.  (*See* Petition, App., p. 39).  In

14  Petitioner's case, the appellate court "treat[ed] a fraudulent scheme or artifice in violation of

15  §13-2310 as a lesser-included offense of illegally conducting an enterprise based on a scheme

16  or artifice to defraud[]" and concluded that "for present purposes, the two constitute the

17  'same offense' under the double jeopardy clauses." (*Id.* at p. 41).   The court also treated

18  the offense of selling unregistered securities in violation of §44-1841 as the same offense as

19  illegally conducting an enterprise based on the sale of unregistered securities.  (*Id.* at p. 40

20  (*citing State v. Cook,* 185 Ariz. 358, 364, 916 P.2d 1074, 1080 (App. 1994)).  However, the

21  court recognized "'even if statutory provisions do constitute the same offense, we will not

22  conclude that multiple punishments are prohibited if we can discern that the legislature

23  clearly intended otherwise.'" (*Id.* at p. 41 (*quoting State v. Siddle,* 202 Ariz. 512, ¶13, 47

24  P.3d 1150, 1155 (App., 2002)).  The court further stated:

25      To commit illegally conducting an enterprise, a person must conduct an
    enterprise "through racketeering." §13-2312(B).  Racketeering, by definition,
26      requires the commission of an offense that would constitute a felony in
    Arizona §13-2301(D)(4).  Thus, "[b]y enacting § [13-2312(B)], which by its
27      express terms requires the commission of another felony offense, the
    legislature clearly intended to permit multiple punishments." *Siddle,* 202 Ariz.
28      512, ¶ 14, 47 P.3d at 1155.

- 9 -

1   (*Id.* at p. 41).  The court also pointed out that the offense of illegally conducting an enterprise

2   normally constituted a class three felony, and several of the thirty acts listed in the

3   racketeering statute constituted more serious offenses.  (*Id.* at p. 42).  Thus, if a charge of

4   illegally conducting an enterprise was based on underlying offenses that were classified as

5   more serious than a class three felony, then "to treat the underlying offenses as lesser-

6   included offenses of illegally conducting an enterprise 'would actually reduce the penalties

7   for the [underlying] offenses.  We presume the legislature did not intend this.'" (*Id.* (*quoting*

8   *Siddle,* 202 Ariz. 512, ¶14, 47 P.3d at 1155)).  Consequently, the appellate court held "that,

9   in the context of a single trial, double jeopardy does not preclude separate convictions and

10  sentences for violations of §13-2310, §44-1481 and §13-2312(B).  Therefore, Chisholm's

11  convictions for those offenses were proper."  (*Id.* (footnote omitted)).

12      Because the Arizona Supreme Court summarily denied Petitioner's Petition for

13  Review (*see* Answer, Exh. F), the appellate court opinion is the last-reasoned state court

14  opinion.  *See Ylst v. Nunnemaker,* 501 U.S. 797, 803-804 (1991); *Plascencia v. Alameida,*

15  467 F.3d 1190, 1198 (9th Cir. 2006).

16                          **(2.)   Analysis**

17      The Double Jeopardy Clause protects defendants against: (1) a second prosecution for

18  the same offense after acquittal; (2) a second prosecution for the same offense after

19  conviction; and (3) multiple punishments for the same offense.  *Ohio v. Johnson,* 467 U.S.

20  493, 498 (1984) (citations omitted); *see also Plascencia,* 467 F.3d at 1204.  "The applicable

21  rule is that, where the same act or transaction constitutes a violation of two distinct statutory

22  provisions, the test to be applied to determine whether there are two offenses or only one, is

23  whether each provision requires proof of a fact which the other does not."  *Blockburger v.*

24  *United States,* 284 U.S. 299, 304 (1932).  However, the United States Supreme Court has

25  made  clear that even if two statutes proscribe the same conduct under the *Blockburger* test,

26  the Double Jeopardy Clause does not prevent the imposition, in a single trial, of cumulative

27  punishments if the state legislature clearly intends to impose them.  *See Missouri v. Hunter,*

28  459 U.S. 359, 368-69 (1983); *see also Brimmage v. Sumner,* 793 F.2d 1014, 1015 (9th Cir.

1  1986) (*citing Hunter,* 459 U.S. at 368-369; *Albernaz v. United States,* 450 U.S. 333, 340-341

2  (1981); *Whalen v. United States,* 445 U.S. 684, 690-692 (1980)).  Therefore, "[w]ith respect

3  to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more

4  than prevent the sentencing court from prescribing greater punishment than the legislature

5  intended."   *Hunter,* 459 U.S. at 365; *see also id.* at 368 ("Legislatures, not the courts,

6  prescribe the scope of punishments.")(footnote omitted).   Accordingly, "[w]here...a

7  legislature specifically authorizes cumulative punishment under two statutes, regardless of

8  whether those two statutes proscribe the 'same' conduct under *Blockburger,* a court's task of

9  statutory construction is at an end and the prosecutor may seek and the trial court or jury may

10  impose cumulative punishment under such statutes in a single trial."   *Hunter,* 459 U.S. at

11  368-369.   In considering this issue, the court is "bound to accept the [State]...court's

12  construction of that State's statutes." *Id.* at 368 (*citing O'Brien v. Skinner,* 414 U.S. 524, 531

13  (1974)); *see also Hicks on Behalf of Feiock v. Feiock,* 485 U.S. 624, 630 & n.3 (1988)

14  (recognizing that the federal habeas court is "not at liberty to depart from state appellate

15  court's resolution of...issues of state law..." where the state supreme court denied review of

16  the underlying state case at bar.).[6]   However, the habeas court is not bound by the state

17  court's ultimate conclusion concerning whether such punishments violate the Double

18  Jeopardy clause. *Brimmage,* 793 F.2d at 1015; *Branham v. Gay,* 2011 WL 5882558, *5 (D.

19  Ariz. Nov. 23, 2011).

20       Although the appellate court in Petitioner's case did not specifically cite *Hunter,* the

21  court did cite *State v. Siddle,* 202 Ariz. 512, 47 P.3d 1150 (App. 2002), which cited and

22  applied the *Hunter* test when analyzing a double jeopardy argument.  (Petition, App., p. 41).

23  Further, the U.S. Supreme Court has held that the state courts are not required to cite U.S.

24

25       [6]Although "on rare occasions the [Supreme] Court has re-examined a state-court
26  interpretation of state law when it appears to be an 'obvious subterfuge to evade
   consideration of a federal issue[]'" *Mullaney v. Wilbur,* 421 U.S. 684, 691 n.11 (1975)
27  (*quoting Radio Station WOW, Inc. v. Johnson,* 326 U.S. 120, 129 (1945) (other citations
28  omitted)), Petitioner makes no such showing that *Mullaney* applies here.

Supreme Court cases nor are they required to have an "*awareness* of our cases so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8 (emphasis in original). Consistent with *Hunter,* the Arizona appellate court in Petitioner's case considered legislative intent. (*See* Petition, App., p. 41 ("To determine legislative intent 'we examine the language of the statute at issue, []'the context of the statute, the language used,  the subject matter, its historical background, its effects and consequences, and its spirit and purpose.'[] *Greenwood v. State,* 217 Ariz. 438, ¶16, 175 P.3d 687, 691 (App. 2008)").  In doing so, the court pointed out that because "racketeering" requires the commission of an offense that would constitute a felony in Arizona, "'by enacting §[13-2312(B)], which by its express term requires the commission of another felony offense, the legislature clearly intended to permit multiple punishments.'"(*Id.* at p. 41 (*quoting Siddle,* 202 Ariz. at 515, 47 P.3d at 1155)). The court also reasoned that "to treat the underlying offenses as lesser-included offenses of illegally conducting an enterprise 'would actually reduce the penalties for the [underlying] offenses. We presume the legislature did not intend this.'" (*Id.* at p.42 (*quoting Siddle,* 202 Ariz. at 517, 47 P.3d at 1155)).

Petitioner attempts to distinguish *Siddle* on the ground that the primary offense in that case was distinct from the predicate felony.  (Reply, p. 5).  However, in *Siddle,* which involved whether the defendant's conviction for drug offenses and for possession of a deadly weapon during a felony drug offense violated double jeopardy, the court pointed out that even if the statutes at issue constituted the same offense, by enacting the statute for the primary offense,

> which by its express terms requires the commission of another felony offense, the legislature clearly intended to permit multiple punishments....And, if the drug offenses were to be regarded as a lesser-included offense of [the primary offense], as [defendant] suggests, it would actually reduce the penalties for the drug offense. We presume the legislature did not intend this.  We conclude that by enacting [the statute prohibiting the primary offense], the legislature intended to increase, not decrease, the penalties for drug offenses when a deadly weapon is involved.

*Siddle,* 202 Ariz. at 517, 47 P.3d 1150, 1155.  It was not unreasonable for the appellate court deciding Petitioner's case to apply the same rationale to Petitioner.

1    Petitioner also points out that the racketeering statute requires commission of one the

2  enumerated felonies "regardless whether the [predicate felony] is charged or indicted."[7]

3  (Reply, p. 5).  According to Petitioner, the fact that the predicate felony does not have to be

4  charged indicates that the legislature did not intend multiple punishments to be imposed for

5  illegally conducting an enterprise by committing one of the enumerated acts of racketeering

6  and the racketeering offense itself.  (*Id.* at p. 6).  Petitioner cites Arizona Supreme Court cases

7  which she contends show the state supreme court would come to a different conclusion from

8  that reached by the appellate court in this case.  (*See* Petition, pp. 6-7 (*citing State v. Wiley,*

9  144 Ariz. 525, 541, 698 P.2d 1244 (1985), *overruled on other grounds by State ex rel.*

10  *Criminal Div. Of Attorney Gen's Office v. Superior Court,* 157 Ariz. 541, 760 P.2d 541

11  (1988); *State v. Gerlaugh,* 134 Ariz. 164, 654 P.2d 800 (1982); *State v. Miniefield,* 110 Ariz.

12  599, 522 P.2d 25 (1974)).  According to Petitioner, "[t]he common thread for permitting

13  multiple punishments in Arizona for the primary offense and the predicate felony, is that the

14  predicate felony and the primary are each independent crimes."

15    In Petitioner's case, the Arizona Supreme Court denied review of the appellate court's

16  decision on this issue.  A determination of state law by a state appellate court is binding in a

17  federal habeas action.  *Hicks,* 485 U.S. at 629-630 & n.3.  This is especially true where the

18  highest court in the state has denied review of the lower court's decision.  *Id.* (*citing West v.*

19  *American Tel. & Tel. Co.,* 311 U.S. 223, 237 (1940)); *see also Shannon v. Newland,* 410 F.3d

20  1083, 1087 (9th Cir. 2005) (recognizing that "federal courts must defer to an intermediate state

21

22    [7]"Racketeering" means in pertinent part:

23    any act, including any preparatory or completed offense, that is chargeable or
      indictable under the laws of the state or country in which the act occurred and,

24    if the act occurred in a state or country other than this state, that would be
      chargeable or indictable under the laws of this state if the act had occurred in

25    this state, and that would be punishable by imprisonment for more than one
      year under the laws of this state and, if the act occurred in a state or country

26    other than this state, under the laws of the state or country in which the act
      occurred, regardless of whether the act is charged or indicted,....

27

28  A.R.S. §13-2301(D)(4).

- 13 -

court's interpretation of state law, made in the very case under consideration, when the state supreme court has denied review[]"). Moreover, the cases Petitioner relies upon are inapposite. Unlike Petitioner's case, they do not involve consideration of the double jeopardy issue under *Hunter* where the two statutes at issue proscribe the same conduct under *Blockburger*. Instead, the state court concluded that separate offenses were at issue. Thus, the cases cited by Petitioner did not place the court in the position to address a *Hunter*-type issue.

The "[Supreme] Court has never held or intimated that the constitutional bar against double jeopardy circumscribes the legislative prerogative to define crimes and prescribe punishments in the context of a single prosecution....The Supreme Court has repeatedly described the third aspect of the Double Jeopardy Clause–the protection against multiple punishments for the same offense imposed in a single proceeding–as protecting only against the imposition of punishment in excess of that authorized by the legislature." *White v. Howes,* 586 F.3d 1025, 1032 (6th Cir. 2009) (footnote omitted). Further, "[t]he current jurisprudence allows for multiple punishment for the same offense provided the legislature has clearly indicated its intent to so provide, and recognizes no exception for necessarily included, or overlapping offenses." *Id.* at 1033 (denying habeas relief to petitioner charged under both felon in possession statute and felony firearm statute). In compliance with clearly established federal law, the Arizona court considered the legislative intent of the statute at issue to determine that the legislature intended multiple punishments. Although this Court, on habeas review, is not bound by the state court's ultimate conclusion whether such punishment violates the Double Jeopardy Clause, this Court "must accept the state court's interpretation of the legislative intent for the imposition of multiple punishments...." *Brimmage,* 793 F.2d at 1015 (*citing Hunter,* 459 U.S. at 368). Clearly established Federal law allows for multiple punishments as long as the punishment imposed is no greater than the legislature intended. *See Hunter,* 459 U.S. at 368; *White,* 586 F.3d at 1035; *Brimmage,* 793 F.2d at 1015-16. On the instant record, the state court's determination was neither contrary to, nor an unreasonable application of, clearly established federal law. Nor was the state court's determination based

1   on an unreasonable determination of the facts in light of the evidence presented in the state

2   court proceeding.  Petitioner's claim fails.

3   ### **b.     Sub-claim (b) Counts 1-4**

4           In sub-claim (b) Petitioner points out that, in addition to charging her in Count 1 with

5   Illegally Conducting an Enterprise and alleging the acts committed in Counts 2-58 as

6   predicate offenses, the State also charged "three separate fraudulent schemes (Counts 2-4) that

7   were, as alleged in Count 1, all part of illegally conducting an Enterprise-[SMI]." (Petition,

8   p. 12).  Petitioner was convicted of defrauding SMI investors (Count 2), Fireman's Fund

9   (Count 3), and Philadelphia Indemnity (Count 4).  Petitioner contends that she did not attempt

10  to defraud the insurance companies and that the insurance companies were not victims.[8]

11  Instead, as "the State acknowledged[,]...the purpose for  obtaining these insurance policies

12  was to tell the Directors and Officers of [SMI] they were insured, which is a perpetuation of

13  the entire fraudulent scheme."  (*Id.* at p.15; *see also id.* at p.14 ("the applicant would have

14  knowingly paid premiums for [sic] policy that could not be enforced so as to provide an

15  illusion that the Directors and Officers were insured." (footnote omitted); *id.* at p. 15 ("that

16  the Petitioner was alleged to have used the insurance companies to create an illusion that the

17  Directors and Officers of [SMI] were insured, does not constitute separate fraudulent

18  schemes.")).  Therefore, Petitioner claims that the Arizona appellate court "erred in finding

19  the applications for Directors and Officers insurance constituted separate fraudulent schemes

20  apart from the overall scheme alleged in Count 2 to defraud [SMI] investors..." and, therefore,

21  Counts 3 and 4 were multiplicitous in violation of Petitioner's right against twice being placed

22  in jeopardy for the same offense.  (*Id.* at p.16).

23  ### **(1.)     The state court proceeding**

24          Petitioner argued on direct appeal that "[t]he charging of three counts of fraudulent

25  schemes and artifice [*i.e.,* Counts 2-4] for one continuous scheme was improper and,

26  _____

27          [8]Petitioner points out that "any claims arising from errors or omissions in the
    Philadelphia Indemnity application were excluded from the proposed insurance." (Petition,

28  p. 13).

therefore, two of the counts of fraudulent scheme and artifice must be vacated."  (Answer, Exh. B, p. 16).[9]  Petitioner contended that although she may have defrauded SMI, Fireman's Fund, and Philadelphia Indemnity, "it was part of *only* one scheme."  (*Id.* (emphasis in original)).  Petitioner maintained that "the frauds perpetrated against Fireman's Fund and Philadelphia Indemnity should not have been charged as separate offenses because she obtained the insurance policies to maintain the status quo relating to the fraudulent scheme perpetrated upon SMI investors."  (Petition, App., p. 3 (internal quotation marks omitted)).

The appellate court's analysis on this issue is multi-layered, first addressing multiplicity and sufficiency of the evidence before reaching the issue of consecutive sentences.

The appellate court acknowledged that Petitioner's claim of multiplicity increased the potential of multiple punishments and, thus, implicated double jeopardy.  The court first turned to A.R.S. §13-2310(A), "which prohibits a person from, 'pursuant to a scheme or artifice to defraud, knowingly obtain[ing] any benefit by means of false or fraudulent pretenses, representations, promises or material omissions.'"  *State v. Henry,* 205 Ariz. 229, 232, 68 P.3d 455, 459 (App., 2003).  The court noted that to establish a violation of §13-2310, the state must first prove the existence of a scheme to defraud[10] and that the defendant, knowing the purpose of the scheme, obtained a benefit pursuant to the scheme by means of false or fraudulent pretenses.  (Petition, App., p. 34 (citations omitted)).  "If the state alleges more than one scheme to defraud, each scheme requires evidence of a 'specific intent' to defraud a 'specific and separate victim.'  *State v. Via*, 146 Ariz. 108, 116, 704 P.2d 238, 246 (1985))."  (*Id.*).

The court went on to state:

In this case, Chisholm may have been motivated by an overarching intent to defraud SMI's investors generally, but she devised three distinct

---

[9]Petitioner also received consecutive sentences for Counts 2 through 4.

[10]"...*i.e.,* some 'plan, device, or trick' to perpetrate a fraud."  (Petition, App., p. 34 *citing State v. Haas,* 138 Ariz. 413, 423, 675 P.2d 673, 683 (1983)).

schemes to defraud separate victims.  The first was the scheme to induce investors to purchase shares of SMI stock by misrepresenting  material facts about SMI's business; the second, the scheme to fraudulently obtain an insurance policy from Philadelphia Indemnity by filing an application for insurance that contained false information and omitted material facts about SMI; the third, a scheme to fraudulently obtain a secondary insurance policy from Fireman's Fund, again by submitting an application for insurance that contained misrepresentations and material omissions.  Chisholm knowingly obtained a benefit from each of these schemes, and she had a specific, separate intent to defraud each of these victims, or in the case of SMI, shareholders, this group of victims.  Therefore, these fraudulent acts were not, as Chisholm suggests, merely acts committed in furtherance of a single scheme but were three separate schemes. *See Via,* 146 Ariz. at 116, 704 P.2d at 246.

(*Id.* at pp. 34-35 (footnote omitted)).  The court noted:

that "scheme" is an imprecise word.  The United States Supreme Court has observed "'scheme' is hardly a self-defining term.  A 'scheme' is in the eye of the beholder, since whether a scheme exists depends on the level of generality at which criminal activity is viewed.'  *See H.J. Inc. v. Nw. Bell Tele. Co.,* 492 U.S. 229, 241 n.3 (1989).  Viewing Chisholm's criminal conduct at the most general level, we agree that her three fraudulent plans may arguably be characterized as parts of one "overall scheme."  For purposes of §13-2310, however, Chisholm devised and carried out three schemes to defraud.

(*Id.* at p. 35 n.2).  While the court agreed with Petitioner that a scheme to defraud implies a plan and numerous acts committed in furtherance of that plan, the court pointed out that Petitioner "committed multiple acts in furtherance of each of the three schemes to defraud....Chisholm devised three separate schemes, tailored for three separate purposes, and we therefore find no basis for vacating any of Chisholm's convictions for violating §13-2310. *See Via,* 146 Ariz. at 116, 704 P.2d at 246."  (*Id.* at pp. 35-36).

The court also rejected Petitioner's argument that there was insufficient evidence to show that she intended to defraud the insurance companies.  Petitioner based her argument on the fact that although she omitted material information about SMI in the applications filed with both insurance companies, no fraud occurred because the policies excluded coverage for errors and omissions.  Because no claims could be made which related to the omissions, Petitioner contended that the insurance companies were not victims.  Concluding otherwise, the court held:

Chisholm's argument is based on the mistaken premise that, to be convicted under §13-2310, a defendant must have sought or successfully obtained a financial gain from the scheme to defraud.  Although §13-2310 requires proof that the defendant "knowingly obtains a benefit," we have

previously determined that the benefit need not be pecuniary, but can be "'anything of value or advantage.'" *State v. Henry,* 205 Ariz. 229, ¶15, 68 P.3d 455, 459 (App. 2003) *quoting* A.R.S. §13-105. Testimony at trial showed that Chisholm obtained the insurance policies only after being questioned about SMI's lack of insurance by a member of SMI's board of directors, who had a professional background in insurance. The insurance policies were therefore a benefit to Chisholm, even if she were unable to receive compensation under them, because they allowed her to inform members of SMI's board of directors and SMI's investors that she had obtained the necessary insurance, which in turn enabled her to perpetuate the scheme to defraud its investors. We therefore conclude there was sufficient evidence to support Chisholm's convictions for knowingly obtaining benefits by false or fraudulent pretenses pursuant to her schemes to defraud Philadelphia Indemnity and Fireman's Fund.

(*Id.* at pp. 37-38).

Next, the court turned to the issue of consecutive sentences for Counts 2 through 4. The court acknowledged that under A.R.S. §13-116 "'[a]n act or omission which is made punishable in different ways by different sections of the laws may be punished under both, but in no event may sentences be other than concurrent.'" (*Id.* at p. 43 (*quoting* A.R.S. §13-116)). The court evaluated Petitioner's claim by applying the "identical elements test" set forth in *State v. Gordon,* 161 Ariz. 308, 315, 778 P.2d 1204, 1211.[11] (*Id.* at pp. 43-44). In applying the "identical elements test" the court held:

Chisholm contends that illegally conducting an enterprise was the "ultimate crime" in this case. However, there were three victims of Chisholm's criminal activities: the investors of SMI, Philadelphia Indemnity, and Fireman's Fund. When there are multiple victims, "our definition of the 'ultimate crime' varies by victim." *State v. Carreon,* 210 Ariz. 54, ¶ 103, 107 P.3d 900, 920 (2005). The "ultimate crimes" against Philadelphia Indemnity and Fireman's Fund were Chisholm's schemes to fraudulently obtain insurance policies from those companies. And the "ultimate crime" against SMI's investors was Chisholm's fraudulent scheme to obtain $24 million. Therefore, consecutive sentences were permissible under §13-116 for counts two through four. *See State v. Henley,* 141 Ariz. 465, 467, 687 P.2d 1220, 1222 (1984) (consecutive sentences permissible for counts punishable under same section of law).[12]

(*Id.* at p. 44).

---

[11]*See infra,* at III.B.1.b.(2.) (setting out test).

[12]*Henley* was subsequently overruled on other grounds by *State v. Soliz,* 223 Ariz. 116, 219 P.3d 1045 (2009).

- 18 -

1

<u>(2.)   **Analysis**</u>

2       Petitioner stresses that her only purpose for obtaining the policies was to inform SMI

3    directors and officers that they were insured, "which is a perpetuation of the entire fraudulent

4    scheme"   and, thus, did not constitute separate fraudulent schemes.   (Petition, p. 15).

5    According to Petitioner, there was not sufficient evidence to conclude that the insurance

6    companies were each victims and, thus, Counts 3 and 4 were multiplicitous violating her right

7    against twice being put in jeopardy for the same offense.   (*Id.* at pp. 15-16).

8       Under 28 U.S.C. §2254(d)(2), a petitioner may challenge the state court's findings

9    based entirely on the state record on the basis that the finding is unsupported by sufficient

10   evidence.   *See Taylor*, 366 F.3d at 999 (citation omitted).   On such a challenge, the habeas

11   court "may not second-guess a state court's fact-finding process unless, after review of the

12   state-court record, it determines that the state court was not merely wrong, but actually

13   unreasonable."   *Id.*

14      The appellate court determined that as a matter of state law, Petitioner engaged in three

15   separate and specific plans to defraud.   Under §13-2310:

16       "*The scheme* need not be fraudulent on its face but *'must involve some sort of
         fraudulent misrepresentations or omissions reasonably calculated to deceive*

17       *persons of ordinary prudence and comprehension.'* " [*State v.*] *Haas*, 138 Ariz.
         [413, 418, 675 P.2d 673, 678 (1983)], *quoting United States v. Pearlstein*, 576

18       F.2d 531, 535 (3d Cir.1978) (emphasis omitted). The term "defraud" as used
         in the statute is not measured by any technical standard but, rather, by a "broad

19       view." *Haas*, 138 Ariz. at 424, 675 P.2d at 684. *A "benefit" under the statute
         is "anything of value or advantage, present or prospective.*" A.R.S. §§

20       13-105(2), 13-2301.

21   *Henry,* 205 Ariz. at 232, 68 P.3d at 458 (emphasis added); *see also Via,* 146 Ariz. at 116, 704

22   P. 2d at 246 (although theft of victim's credit cards may have constituted one act, and

23   defendant may have had the same general intent in each count to defraud banks using stolen

24   credit cards, "[t]here was, however, a specific and separate victim, as well as a specific and

25   separate credit card, in each count.").   The state record was clear that  Petitioner knowingly

26   provided false information to both Philadelphia Indemnity and Fireman's Fund to obtain

27   insurance coverage in the amount of $3 million and $2 million, respectively, for officers and

28   directors.   The state court acknowledged Petitioner's argument that there was no way she

could collect on the policies, however, the court was clear that Petitioner knowingly provided the false information to obtain the policies in order to gain the benefit of representing to the SMI board of directors, when perpetuating the SMI scheme, that she obtained the necessary insurance.  Here, although Petitioner may have had the overarching scheme to defraud the SMI directors and investors with the fact that she had obtained insurance, the court determined that Plaintiff had submitted applications containing false and misleading information to two separate insurance companies to obtain insurance from each company and as a result, Petitioner derived a benefit, *i.e.* advantage, of representing that she was insured so as to satisfy and encourage investors.   Arizona law is clear that for purposes of A.R.S. §13-2310, the "benefit" can be "'anything of value or advantage,' not merely pecuniary gain." *Henry,* 205 Ariz 229, 68 P.3d 455, 459 (App., 2003) (*quoting* A.R.S. §13-105) (holding that "benefit" as used in A.R.S. §13-2310 applies not only to property and pecuniary gains, but to "anything of value or advantage" including intangible gains such as sexual gratification). Upon consideration of the facts in evidence, the Arizona court in Petitioner's case determined as a matter of state law that Counts 3 and 4 involved separate and distinct victims.  Although Petitioner disagrees with the state court's conclusion, this is not a case where the state court failed "to take into account and reconcile key parts of the record...." *Taylor,* 366 F.3d at 1008. Moreover, as to the court's application of  A.R.S. §13-2310 and reliance on *Henry*, the "state court has the last word on the interpretation of state law." *Mendez v. Small,* 298 F.3d 1154, 1158 (9th Cir. 2002).   The record is clear that the state court considered and weighed the relevant evidence in applying the applicable state law to rendering its decision that each insurance company qualified as a separate victim under state law. On such a record, the state-court decision was not based on an unreasonable determination of the facts in light of the evidence presented in the state proceeding.

After the court determined that different victims were at issue in Counts 2, 3 and 4, the court upheld Petitioner's consecutive sentences for Counts 2 through 4 pursuant to A.R.S. §13-116, which provides in pertinent part:

An act or omission which is made punishable in different ways by different

1

2

> sections of the laws may be punished under both, but in no event may sentences be other than concurrent.

3

A.R.S. §13-116.  As the appellate court in Petitioner's case noted, "[e]ssentially, §13-116

4

prohibits consecutive sentences for a 'single act.'  *State v. Hampton,* 213 Ariz. 167, ¶64, 140

5

P.3d 950, 965 (2006)."  (Petition, App., p.43).  Petitioner argues that the state court's decision

6

upholding imposition of consecutive sentences for Counts 2 through 4 under A.R.S. §13-116

7

violated the Double Jeopardy Clause.  (Petition, pp. 11-16).

8

With regard to the imposition of consecutive sentences, the "'double jeopardy

9

guarantee serves principally as a restraint on courts and prosecutors.  The legislature remains

10

free under the Double Jeopardy Clause to define crimes and fix punishments....'" *Gentry v.*

11

*MacDougall,* 685 F.2d 322 (9th Cir. 1982) (holding that Double Jeopardy Clause did not

12

prohibit Arizona court's imposition of consecutive sentences for single act of drunk driving

13

which resulted in multiple deaths) (*quoting Brown v. Ohio,* 432 U.S. 161, 165 (1977)); *see*

14

*also Brown, 432* U.S. at 165 "[w]here consecutive sentences are imposed at a single criminal

15

trial, the role of the constitutional guarantee is limited to assuring that the court does not

16

exceed its legislative authorization by imposing multiple punishments for the same offense.").

17

Thus, "'even if multiple offenses constitute the 'same offence' under [the *Blockburger*] test,

18

the imposition of cumulative punishments does not violate the Double Jeopardy Clause if the

19

state legislature authorizes cumulative punishments." *Clem v. Schriro,* 2007 WL 3231957 (D.

20

Ariz. Nov. 1, 2007) (*citing Hunter,* 459 U.S. at 368-369; *Johnson,* 467 U.S. at 599 n.8).

21

Therefore, "[w]ith respect to cumulative sentences imposed in a single trial, the Double

22

Jeopardy Clause does no more than prevent the sentencing court from prescribing greater

23

punishment than the legislature intended." *Hunter,* 459 U.S. at 366.

24

A.R.S. § 13-116 demonstrates the intent of the Arizona legislature to authorize multiple

25

convictions where the statute is satisfied.  The appellate court's conclusion in Petitioner's case

26

"was based on its determination that the Arizona legislature intended that consecutive

27

sentences be imposed for the conduct at issue...On habeas corpus review, this Court must

28

defer to the Arizona Court of Appeals' determination regarding the state legislature's

intent...." *Branham v. Gay,* 2011 WL 5882590, *25 (D.Ariz. May 2, 2011) (citations omitted), *adopted by Branham,* 2011 WL 5882558.  However, this Court is not bound by the Arizona court's conclusion whether the punishment imposed violates the Double Jeopardy Clause.  *Id.; see also Brimmage,* 792 F.3d at 1015.

Even though Petitioner is charged in Counts 2, 3, and 4 with violating the same statute, there is a distinction among the Counts in that:  Count 2 charges Petitioner with "pursuant to a scheme or artifice to defraud, knowingly obtain[ing] a benefit, $24,000,000 from..." SMI investors "by means of false and fraudulent pretenses, representations, promises or material omissions"; Count 3 charges Petitioner with "pursuant to a scheme or artifice to defraud, knowingly obtain[ing] a benefit, insurance for Directors and Officers of [SMI], from Fireman's Fund Insurance Policy #CXD 600-02-025, by means of false or fraudulent pretenses, representations, promises or material omissions; and Count 4 charges Petitioner with "pursuant to a scheme or artifice to defraud, knowingly obtain[ing] a benefit, insurance for Directors and Officers of [SMI], from Philadelphia Indemnity Insurance Company #HFP003193, by means of false or fraudulent pretenses, representations, promises or material omissions." (Petition, App., pp. 1-2).  The Arizona court determined as a matter of state law that Petitioner received a distinct and separate benefit under A.R.S. §13-2310 from the victims alleged in each count: the investors of SMI; Fireman's Fund; and Philadelphia Indemnity. Thus, under Arizona law, Petitioner committed three separate offenses of fraudulent scheme and artifice. In Petitioner's case, the state court recognized that "[w]hen there are multiple victims, 'our definition of []ultimate crime[] varies by victim.'" (Petition, App., p. 44 (*quoting Carreon,* 210 Ariz. at ¶103, 107 P.3d at 920)).

"In *Blockburger,* the [C]ourt concluded that 'the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.'" *Faulkner v. Schriro,* 2007 WL 2949053 at *15 (D.Ariz. Oct. 9, 2007) (*quoting Blockburger,* 284 U.S. at 304).  "[T]he requirement of proof of the disparate victims avoids any double jeopardy concerns."  *Id.* (citations omitted) (rejecting double jeopardy claim where Arizona court imposed consecutive sentences for two

counts of aggravated assault on police officers arising out of the same incident).  *See also United States v. Stewart*, 420 F.3d 1007, 1012 (9th Cir. 2005) (an indictment is not multiplicitous where each offense requires proof of an additional fact which the other does not); *Riley v. Stewart*, 2005 WL 3434710 (D. Ariz. Dec. 13, 2005) (denying habeas relief where Arizona court imposed consecutive sentences for each victim present during the course of one armed robbery) (*citing Hunter*, 459 U.S. at 344, 368-369).   Consistent with *Blockburger*, the Arizona court determines whether a defendant's conduct is a single act by applying the identical elements test, which requires the court to consider

> the facts of each crime separately, subtracting from the factual transaction the evidence necessary to convict on the ultimate charge–the one that is at the essence of the factual nexus and that will often be the most serious of the charges. If the remaining evidence satisfies the elements of the other crime, then consecutive sentences may be permissible under A.R.S. § 13-116. In applying this analytical framework, however, we will then consider whether, given the entire "transaction," it was factually impossible to commit the ultimate crime without also committing the secondary crime. If so, then the likelihood will increase that the defendant committed a single act under A.R.S. § 13-116. We will then consider whether the defendant's conduct in committing the lesser crime caused the victim to suffer an additional risk of harm beyond that inherent in the ultimate crime. If so, then ordinarily the court should find that the defendant committed multiple acts and should receive consecutive sentences.

*State v. Gordon*, 161 Ariz. at 315, 778 P.2d 1204, 1211; *see also Carreon*, 210 Ariz. at 74, 107 P.3d 900, 920 (when there is more than one victim, "our definition of 'ultimate crime' varies by victim.").[13]

In Petitioner's case, the Arizona court applied the test set out in *Gordon.*   In Petitioner's case, each crime alleged in Counts 2 through 4 was committed against a separate victim and, thus, each crime required proof of a fact that other did not.  As the state court pointed out, the "ultimate crime" against each insurance company was to obtain an insurance policy from each specific insurance company; while, the "ultimate crime" against SMI

---

[13]To any extent that Petitioner's argument can be read as challenging the state court's application of A.R.S. §13-116 as a matter of state law, such claim is not cognizable on federal habeas review.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

1   investors was Petitioner's scheme to obtain $24 million. Thus, Petitioner stands convicted of

2   three different crimes.   In light of the distinction between Counts 2, 3, and 4, Petitioner's

3   convictions survive the *Blockburger* test and, thus, the Double Jeopardy Clause has not been

4   violated. *See Blockburger*, 284 U.S. at 302 (double jeopardy not implicated due to factual

5   distinction between the transactions).

6        The state court's decision upholding Petitioner's sentences was not contrary to, or an

7   unreasonable application of, clearly established federal law as determined by the United States

8   Supreme Court.  Nor did the state court's proceeding result in a decision that was based on

9   an unreasonable determination of the evidence presented.  Petitioner's claim fails on the

10  merits.

11                  **2.      Ground II: Ineffective Assistance of Counsel**

12       On September 25, 2001, Petitioner was indicted, in CR2001-3189 (hereinafter "Case

13  No. 3819"), on 58 counts which is discussed above with regard to Petitioner's Double

14  Jeopardy claims. (Petition, p.6).  Thereafter, on April 24, 2002, Petitioner and her husband

15  were indicted, in CR 2002-1306 (hereinafter "Case No. 1306"), on: one count of Conspiracy

16  to commit the offenses of theft, perjury, and fraud in insolvency; two counts of Fraud in

17  Insolvency; and one count of Perjury. (Petition, App., pp. 102-04).  Petitioner asserts that on

18  October 7, 2002, the State, through Mr. John Evans, an Assistant Attorney General,  informed

19  defense counsel, Mr. Andrew Diodati, that the State intended to proceed with trial in Case No.

20  1306 prior to trial commencing in Case No. 3819. (Petition, p. 7).  On August 29, 2003, the

21  State advised the court that Case No. 1306 should be the first of the two cases to proceed to

22  trial. (*Id.*). Additionally, on October 10, 2002, Mr. Evans further told defense counsel that the

23  State was pursuing Case No. 1306 first in order to obtain a perjury conviction against

24  Petitioner with which the State could impeach Petitioner in the latter trial in Case No. 3189.

25  (*Id.*).

26       On December 22, 2004, defense counsel moved to dismiss Case No. 1306 on grounds

27  of prosecutorial misconduct. (*Id.* at pp. 7-8).  The trial court denied the motion as untimely

28  filed. (*Id.* at p.8).  Defense counsel did not object in Case No. 3189 "to the trials being tried

1   out of their chronological order." (*Id.*).

2     Case No. 1306 proceeded to bench trial in February 2005, and Petitioner was convicted

3   of: Conspiracy to commit theft, perjury, and fraud in insolvency; and two counts of Fraud in

4   Insolvency. (*Id.*;Petition, App., pp. 125-26). Thereafter, the State filed in Case No. 3189 a

5   Motion In Limine Re: Prior Conviction of Maryanne Chisholm As Impeachment. (Petition,

6   App., pp. 127-30). Petitioner contends that "[h]ad it not been for the State's intended use of

7   her convictions in [Case No. 1306]...to impeach her trial testimony in [Case No. 3189]..., the

8   Petitioner would have testified."[14] (Petition, p. 8). Petitioner argues that defense counsel was

9   ineffective for failing to request that the trials proceed in their chronological order, this failure

10  deprived her of her right to testify in Case No. 3189, and in denying her claim, the state court

11  applied the wrong standard for establishing prejudice. (*Id.* at pp. 17-21).

12  

**a. The state court proceeding**

13    Petitioner raised her ineffective assistance of counsel claim in her PCR Petition.

14  Petitioner argued that to establish prejudice on this issue, she need only show that she would

15  have testified but for defense counsel's deficient representation. (*See* Petition, App., p. 70-

16  71). The trial court denied the claim finding that defense counsel "was not deficient for failing

17  to object to the order of the trials. Even if it would have been wise strategy for Petitioner's

18  counsel to suggest that the cases be tried in chronological order relative to the indictments,

19  she was not prejudiced by [defense counsel's]...failure to embrace and pursue that strategy."

20  (*Id.* at p. 70). In finding lack of prejudice, the trial court rejected Petitioner's proposed test.

21  Instead, the trial court required her to show "that she was prejudiced in the sense that there

22  was a reasonable probability that her trial may have had a different outcome had she testified."

23  (*Id.* at p. 71). The court concluded that Plaintiff's "claim is purely speculative, and

24  considering the overwhelming evidence of her guilt, she cannot make a colorable showing in

25  support of her argument." (*Id.*).

26  —————————————

27    [14]Petitioner submitted her affidavit statement that: "Had it not been for the State's
    intended use of the convictions in CR2002-1306, to impeach my credibility if I elected to
28  testify in CR2001-3189, I would have testified in CR2001-3189." (Petition, App., p. 131).

1    In her Petition for Review to the appellate court, Petitioner argued that the trial court

2    applied the wrong standard to evaluate prejudice. (*Id.* at pp. 81-12). Petitioner argued that

3    her case was akin to cases where a defendant pled guilty based on erroneous legal advice and,

4    thus, to establish prejudice she need only show that she would have testified had it not been

5    for defense counsel's error in allowing the trials to proceed in the order they did. (*Id.* at pp.

6    84-86 (*citing State v. Bowers,* 192 Ariz. 419, 966 P.2d 1023 (App., 1998)).

7    The appellate court cited *Strickland v. Washington,* 466 U.S. 668 (1984), in addition

8    to state cases, for the standard applicable to claims of ineffective assistance of counsel. (*Id.*

9    at pp. 96-100). In holding that the trial court applied the "correct test" with regard to

10   prejudice, the appellate court stated:

11   [Petitioner] contends she was only required to show she was prejudiced by
     having decided not to testify as a result of counsel's ineffectiveness, much the
12   same as the defendant in *Bowers* was prejudiced by having chosen to waive his
     trial rights and enter a guilty plea. *See id.* ¶7. But the trial court was correct
13   that the prejudice the defendant had to show in *Bowers* was necessarily
     different, because the alleged deficiency there had occurred in the plea context.
14   *See id.* ¶¶ 5-6. That case simply stands for the proposition that, when a guilty
     plea has been induced by erroneous legal advice, a defendant claiming counsel
15   was ineffective need not show that, had the case proceeded to trial, the
     defendant would have been acquitted. *See id.* ¶19. It does not support
16   Chisholm's contention the standard applicable in *Bowers* applies here.
         The ineffectiveness alleged here must be evaluated in terms of its effect
17   on the trial. As the trial court wrote, Chisholm was like any other defendant
     who must decide whether to testify in light of impeachment evidence available
18   to the state. Even assuming counsel's performance was deficient and that the
     state obtained the impeachment evidence as a result of that deficiency,
19   Chisholm has not sustained her burden of establishing that the outcome would
     have been different had she testified. We have no basis for second-guessing the
20   trial court or for concluding it abused its discretion in denying Chisholm post-
     conviction relief without an evidentiary hearing.
21
22   (*Id.* at pp. 99-100).

23   The Arizona Supreme Court summarily denied Petitioner's Petition for Review. (*Id.*

24   at p. 101).

25   **b.   Analysis**

26   The United States Supreme Court has observed that "'the right to the effective

27   assistance of counsel is recognized not for its own sake, but because of the effect it has on the

28   ability of the accused to receive a fair trial....' *Roe v. Flores-Ortega,* 528 U. S. 470, 481

(2000) (*quoting United States v. Cronic,* 466 U.S. 648, 658 (1984)).  Therefore, "[a]bsent some effect of challenged conduct on the reliability of the...process the [effective counsel] guarantee is generally not implicated.'" *Id.* (*quoting Cronic,* 466 U.S. at 658)).[15]  Thus, to establish ineffective assistance of counsel, the Supreme Court requires that that the defendant not only show that counsel's representation fell below the range of competence demanded of counsel in criminal cases, but also that the defendant suffered actual prejudice as a result of counsel's incompetence.[16]   *See Strickland,* 466 U.S. 668.   To establish prejudice under *Strickland,* the defendant  "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.   Further, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691.

To satisfy the prejudice requirement in cases where "counsel's alleged deficient performance arguably led not to a judicial proceeding of disputed reliability, but rather to the forfeiture of a proceeding itself...", the Supreme Court has required the defendant to show that she would have availed herself of the proceeding that was forfeited due to counsel's deficient performance.  *Flores-Ortega,* 528 U.S. at 486 (to satisfy the prejudice requirement where failure to file notice of appeal results from counsel's deficient performance, "we require the defendant to demonstrate that, but for counsel's deficient conduct, he would have appealed.");

---

[15]The Supreme Court has recognized a very narrow exception to *Strickland*'s prejudice standard where prejudice will be presumed "in circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified.'" *Florida v. Nixon,* 543 U.S. 175, 190 (2004) (*quoting Cronic,* 466 U.S. 658); *see also Strickland,* 466 U.S. at 692.  Petitioner does not argue that her case falls within the narrow exception discussed in *Cronic.*

[16]Because failure to make the required showing of either deficient performance or prejudice defeats the claim, the court need not address both factors where one is lacking. *Strickland,* 466 U.S. at 697-700.

1   *see also Hill v. Lockhart,* 474 U.S. 52, 59 (1985) (to satisfy the prejudice requirement where

2   defendant's decision to enter plea instead of proceeding to trial was based on deficient

3   performance, "the defendant must show that there is a reasonable probability that, but for

4   counsel's errors, he would not have pleaded guilty and would have insisted on going to

5   trial.").

6          In Petitioner's case, the state court rejected Petitioner's argument that she need only

7   show that she would have testified but for counsel's deficient performance.  Instead, the state

8   court required Petitioner to show that the outcome of the proceeding would have been

9   different but for counsel's errors.  Under the AEDPA, the federal court's review of the state

10  court's decision  is subject to another level of deference. *Bell v. Cone*, 535 U.S. 685, 689-699

11  (2002). In order to merit habeas relief, therefore, Petitioner must make the additional showing

12  that the state court's ruling that counsel was not ineffective constituted an unreasonable

13  application of *Strickland.   See* 28 U.S.C. §2254(d)(1); *see also Cullen,* __ U.S. __, 131 S.Ct.

14  at 1403 (federal habeas court's review of state court's decision on ineffective assistance of

15  counsel claim is "doubly deferential."); *Harrington,* ___ U.S. at __, 131 S.Ct. at 788 ("Federal

16  habeas courts must guard against the danger of equating unreasonableness under *Strickland*

17  with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether

18  counsel's actions were reasonable. The question is whether there is any reasonable argument

19  that counsel satisfied *Strickland's* deferential standard.").

20         The state court, in applying *Strickland,* applied the correct law to the issue. *See Dows*

21  *v. Wood,* 211 F.3d 480, 484-85 (9th Cir. 2000) (*Strickland* "is considered in this circuit to be

22  'clearly established Federal law, as determined by the Supreme Court of the United States'

23  for purposes of 28 U.S.C. § 2254(d) review.").  Petitioner's case is not akin to *Hill.*  The

24  alleged deficient performance in Petitioner's case did not prevent Petitioner from proceeding

25  to trial.  Therefore, the state court's requirement that Petitioner show prejudice by establishing

26  that the outcome of trial would have been different had she testified is consistent with

27  *Strickland* and its progeny.  The state court's ruling was not contrary to, nor an unreasonable

28  application of, clearly established law. Nor was the state court ruling an unreasonable

1 application of the facts in light of the evidence presented in the state court proceeding.

2 Consequently, Petitioner's claim fails on the merits.

3 **IV.    CONCLUSION**

4       As set forth above, the state court's decision resolving the issues raised by Petitioner

5 in her Petition for Writ of Habeas Corpus was not contrary to, nor an unreasonable application

6 of clearly established Federal law.   Nor was the state court's decision based on an

7 unreasonable determination of the facts in light of the evidence presented.   Consequently,

8 Petitioner's claims fail on the merits.

9 **V.    RECOMMENDATION**

10       For the foregoing reasons, the Magistrate Judge recommends that the District Court,

11 after its independent review, deny Petitioner's Petition for Writ of Habeas Corpus (Doc. 1)

12 on the merits.

13       Pursuant to 28 U.S.C. §636(b) and Rule 72(b)(2) of the Federal Rules of Civil

14 Procedure and LRCiv 7.2(e), Rules of Practice of the U.S. District Court for the District of

15 Arizona, any party may serve and file written objections within fourteen (14) days after being

16 served with a copy of this Report and Recommendation. A party may respond to another

17 party's objections within fourteen (14) days after being served with a copy. Fed.R.Civ.P.

18 72(b)(2).   No replies will be permitted without leave of the District Court.  If objections are

19 filed, the parties should use the following case number: **CV 10-694-TUC-DCB**.

20       Failure to file timely objections to any factual or legal determination of the Magistrate

21 Judge may be deemed a waiver of the party's right to *de novo* review of the issues.  *See*

22 *United States v. Reyna-Tapia,* 328 F.3d 1114, 1121 (9th Cir.) (*en banc*), *cert. denied,* 540 U.S.

23 900 (2003).

24       DATED this 8th day of April, 2013.

26 _____
Héctor C. Estrada
27 United States Magistrate Judge